EDWARD WINSOR and HORACE W. WINSOR, Respondents, v. LAFAYETTE COUNTY BANK, Appellant.

Kansas City Court of Appeals, July 6, 1885.

1. BANKS—ACTS OF OFFICIAL AGENTS—AGENCY.—A banking corporation, of course, acts through its official agents, and is held strictly to the contracts made in the name of, and on behalf of, the corporation. But the acts of officers must be such as are in the line of their duty or agency. It is not among the ordinary duties of a cashier to bargain and sell real estate, nor to contract with brokers for that purpose, and a bank will not be bound by it unless previous authority be shown, or unless estopped by a line of conduct recognizing such acts.

2. —— RATIFICATION.—There can be no ratification of an act without knowledge of the act having been done. The ratification of an act previously unauthorized must, in order to be binding, be made with a full knowledge of all the material facts. *Baldwin v. Burrows*, 47 N. Y. 211.

3. —— COURSE OF CONDUCT—EFFECT OF.—A corporation may, by a course of conduct with its *officers and the public*, give them authority and confer upon them powers they would not have as such officers but for the usages of the corporation.

APPEAL from Lafayette Circuit Court, HON. JOHN P. STROTHER, J.

*Reversed and remanded.*

Statement of case by the court.

The plaintiffs are real estate agents and sued defendant for one hundred dollars commission alleged to have been earned by them in negotiating a sale of real estate, belonging to defendant in Lexington, Mo., to Mrs. Ada Young.

Plaintiffs claim that the property had been put in their hands for sale by Joseph Wilson, the cashier of the bank, he agreeing to pay them commission for any sale they might negotiate. That shortly thereafter they did negotiate a sale to Mrs. Young and claimed the commission in the sum of one hundred dollars. It was not denied by the cashier that he did put the property in the hands of the plaintiffs, but it was asserted by him that *he* made the sale, and that it was not made or assisted by the efforts of plaintiffs. At this time George Wilson, Robert Wilson, Joseph A. Wilson, T. C. Wood, and John Wilson were the directors of the bank. George being president, Robert vice-president and Joseph cashier. At the time, September, 1882, George Wilson was absent in Europe, and John was in California—leaving only Robert and Joseph Wilson, and T. C. Wood, in Lafayette county. The evidence tended to show that plaintiffs' employment, their claim of having made the sale, and demand for compensation was unknown to any officer excepting the cashier.

There was no entry in any book of the bank of the employment of plaintiffs or of the sale of the property.

The deed was made out and signed by the vice-president, Robert Wilson, and upon return of the president was likewise signed by him. The cashier disclaimed owing plaintiffs ; and each of the other officers testified they knew nothing of his employment, nor did they, or either of them, individually or officially, ratify the contract and agreement alleged to have been made by the cashier. The following rules and bylaws of the bank were introduced in evidence.

"RULE 15.—*Duties of the cashier.* It shall be the duty of the cashier to sign all certificates of stock, checks, bills of exchange and certificates of deposit. He shall take into his custody, at this bank, the funds, and the books, and the papers of the bank; he shall attend all meetings of the board, keep a regular record of its proceedings, furnish official abstracts therefrom, and give all such information as may be required by the board or any committee. He shall correspond, as the organ of the board, with all corporations or persons doing business with this bank, on subjects connected with his department. He shall superintend the general and individual accounts of this bank, lay before the directors once a week a general statement of the accounts of this bank, and generally shall perform all such other services as may be required of him by the board.

"RULE 12.—*Committees and their duties.* At each semi-annual settlement of the accounts of this bank a committee of three directors shall be appointed by the board, and it shall be the duty of such committee to examine into the general condition of the bank, and to examine and compare with the books all bills discounted, and other property of the bank, which examination shall be full and complete, wherein shall be brought for comparison all vouchers for money paid out for any account whatever, not less than once in every three months. A committee of three directors shall be appointed by the board to count all moneys on hand and all cash items. Both of the above committees shall report to the board.

"RULE 9.—*Meetings of the Board.* Regular meetings of the board shall be held at the banking house of this bank on every Tuesday and Friday, at 12 o'clock M., for the purpose of passing on such paper as may be offered, *and for the transaction of general business.* The president, or in his absence the cashier, may call special meetings of the board at the request of any three members, or at his own discretion. *At all meetings of the board three members shall be required to compose a quorum.*"

That whatever other real estate sales had been made

by the bank were ordered by the board of directors and were entered of record in the books of the bank, except this sale.

On the trial the following instructions were given for the plaintiffs:

"2. If the jury believe from the evidence that the property described in plaintiffs' petition was placed in the hands of plaintiffs as real estate agents, for the purpose of effecting sale thereof, by Joseph A. Wilson, cashier of defendant, and that plaintiffs negotiated a sale to Addie Young, purchaser, with the knowledge of defendant, its officers or those in control of its real estate, with authority to sell it, or to transact, under its bylaws, its general business, and reported same to defendant, and that said defendant confirmed and ratified said sale with knowledge that plaintiffs had made it by executing a deed to the purchaser, then defendant is liable to plaintiffs for commission on said sale, although they may believe from the evidence that the employment of plaintiffs by said cashier to make such sale was without authority from defendant in the first instance.

"3. That although the jury may believe from the evidence that defendant had negotiated with Addie Young for the sale of said property, and had offered the same to her for the sum of one thousand eight hundred dollars if accepted within a limited time, yet, if the jury believe from the evidence that said offer had not been accepted within such time, and that at or near the expiration of such period of time the said property was placed in the hands of plaintiffs by its cashier, Joseph A. Wilson, for sale at an advance of two hundred dollars over and above the price at which it had been offered to said Ada Young, and that plaintiffs negotiated a sale of said property with the knowledge of defendant or its officers having authority by its bylaws, as shown in evidence, to sell and convey real estate or transact its general business, and reported the sale by plaintiffs at such advanced price to defendant, and that said sale was ratified and confirmed by said defendant by executing and delivering a deed in conformity thereto, with knowl-

edge by the officers so ratifying, that plaintiffs had been employed by said cashier and had made said sale, then the jury will find for plaintiffs, the reasonable value of their services for making such sale not exceeding the sum of one hundred dollars, although such sale was made by plaintiffs to said Addie Young.

"4. The court instructs the jury that if they find, from the evidence, the property in dispute was placed in the hands of plaintiffs, as real estate agents, for sale, by Joseph A. Wilson, cashier of defendant, and that the plaintiffs made the sale to Ada M. Young, and that the same was made with the knowledge of defendant or its officers, with authority as stated in other instructions, and that with such knowledge of defendant or its said officers said sale was ratified and confirmed by the execution of the deed to the purchaser, then it is not necessary that such ratification should be by formal resolution or entry in writing on the record of defendant."

Among other instructions given at the instance of the defendant was the following:

"3. The mere fact that the president and vice-president of the bank executed the deed to Ada Young, and that the bank received the two thousand dollars therefor, is not of itself evidence of a ratification by the bank of any contract made by said cashier with said Winsor for commissions upon the sale of said property."

The defendant also asked the court to grant the following instructions:

"6. The court instructs the jury that upon the pleadings and evidence you must find for defendant.

"7. The court instructs the jury that by the plaintiffs' petition they sue upon a contract therein averred to have been made by the bank through its cashier, and the plaintiffs must prove an original authority in said cashier to make said contract with plaintiffs for said commissions, and the jury cannot consider any facts that would go to show that the bank afterwards adopted said cashier's contract, the plaintiffs not having pleaded any ratification of said cashier's contract for commission to said Winsor."

The trial resulted in a judgment for plaintiffs and defendant appeals.

GRAVES & AULL, for the appellant.

I.   The court should have granted the instruction asked by defendant—numbered six—for the same reason that it should have granted the motion for a new trial, viz.: that the verdict was against the evidence and against the instructions.   The sale was *not* effected through the services rendered by plaintiffs for defendant.

II.   The cashier had no authority to bind the corporation to pay commissions, and by no subsequent act was such unauthorized contract of the cashier ratified. Neither the statutes of the state nor the by-laws of the bank give the authority to the cashier, but prohibit it *except to the directors*, and the general principles of law do not contemplate that the cashier of a bank can so bind the bank.   *Sav. Ass'n v. Sailor*, 63 Mo. 27 ; *United States v. Bk. of Columbus*, 3 Miller (U. S.) 28 ; *Bk. of United States v. Dun*, 6 Peters (U. S.) 59 ; *Shryock v. Baschore*, 82 Pa. St. 159 ; *Rice v. Peninsular Club*, Sup. Ct. Mich. 1883, Vol. 17, N. W. Rep., No. 10, p. 708.

III.   The execution of the deed was not a ratification.   The evidence shows that the vice-president signed it, but that was no execution of the deed by the bank.   Afterwards the president executed the deed, but he had no thought of adopting any act of the cashier in that behalf, and plaintiffs' connection with the sale was not even mentioned to him.   The ratification must have been made by a majority of the directors, and with a full knowledge of the facts.   *Keeler v. Salisbury*, 33 N. Y. 653 ; *Baldwin v. Burrows*, 47 N. Y. 211; *Moore's Exec'r v. Patterson*, 28 Pa. St. 505 ; *Amory v. Hamilton*, 17 Mass. 103 ; *Nixon v. Palmer*, 8 N. Y. 398.

RYLAND & RYLAND, for the respondents.

I.   When there is any evidence to support a verdict and judgment the appellate court will not disturb it because against the weight of evidence, nor for the admission of incompetent evidence when it is seen to be

immaterial. There must be an absolute failure of evidence to warrant reversal. *Russell v. Berkstresser*, 77 Mo. 417; *Birney v. Sharp*, 78 Mo. 73; *Combs v. Smith*, 78 Mo. 32; *Roe v. Ferguson*, 72 Mo. 225; *Price v. Evans*, 49 Mo. 396; *Penn v. Lewis*, 12 Mo. 161.

II.  It is well established law that on a suit by real estate agents for the amount of their commissions, it is immaterial that the owner sold the property and concluded the bargain, if the sale was effected through the exertions of the agent. *Tyler v. Parr*, 52 Mo. 249; *Bell v. Kaiser*, 50 Mo. 150; *Jones v. Adler*, 34 Md. 440; *Lincoln v. McClutchie*, 36 Conn. 136; *Timberman v. Craddock*, 70 Mo. 638.

III.  The case was fairly submitted by the instructions to the jury upon the only question at issue, whether the sale was made by plaintiffs or the cashier. The defendant is concluded by the verdict against it.

IV.  The defendant having availed itself of the services and received the benefit is bound in conscience to pay, and cannot plead want of authority. Angell, etc., Corp'n (6 Ed.) sect. 284. *Firtu v. LaRue*, 15 Barb. (N. Y. 323).

V.  Ratification by a corporation of the unauthorized act of its agents is equivalent to previous authorization. It will be inferred from failure to promptly disavow the act when it came to the knowledge of the corporation. *Knowledge of the officers is knowledge of the corporation*. *Bk. Springfield v. Fricke*, 75 Mo. 178; Field on Corp'ns sect. 167; *Preston v. Lead Co.*, 51 Mo. 43; *Bank v. Gilstrap*, 45 Mo. 419. The corporate seal gives the assent of the corporation. *Shusalter v. Pirner*, 55 Mo. 218; *Haven v. Adams*, 4 Allen (Mass. 80).

Opinion by ELLISON, J.

The evidence in this case fails to show any authority on the part of the cashier to make the employment alleged in the petition, and so does it fail to show a ratification, on the part of the defendant.

A banking corporation, of course, acts through its official agents and is held strictly to the contracts made

in the name of, and on behalf of the corporation. But the acts of officers must be such, as is in the line of their duty or agency. It is not among the ordinary duties of a cashier to bargain and sell real estate nor to contract with brokers for that purpose. Such is not the understanding of the duties or powers of a cashier. The duty of the cashier of defendant as stated in the by-laws are somewhat more circumscribed than those commonly supposed to devolve upon that officer and as his duty is defined to be, by the supreme court of the United States in the case of the *United States v. City Bank of Columbus* (21 Howard 360).

There is nothing in the case going to show any previous authority given to the cashier, either by direct act of the directory, or by a line of conduct which would now estop the defendant. There is nothing to show he had ever attempted to exercise such authority before, or that a case substantially of this character had ever occurred, in the history of the bank. Neither is there any evidence of a ratification of the contract declared to have been made by the cashier. But on the other hand the evidence on that subject is that the contract as claimed was wholly repudiated by the other members of the directory. There being, then, no authority in a cashier, as such, to make the contract, there being no line of previous conduct on part of the officials estopping them in this case, and there being no ratification shown, plaintiffs' case, necessarily fails.

It is an evident proposition that sales of real estate are not among the ordinary functions and duties of the cashier of a bank.

Judge Shepley gives a succinct statement of their duties : he says, the duties of a cashier are "to keep the funds, notes, bills and other choses in action of the bank to be used from time to time for the exigencies of the bank, to receive directly and through subordinate officers all monies and notes of the bank ; to surrender notes and securities upon payments ; to draw checks ; to withdraw funds of the bank on deposit ; and generally to transact as the executive officer of the bank the ordinary

routine of business. But the ordinary duties of a cashier *do not comprehend the making of a contract which involves the payment of money, without an express authority from the directors*, unless it be such as relates to the usual and customary transactions of the bank." *Morse v. Mass. National Bank*, 1 Holmes U. S. C. C. 209; and to the same effect is *Bank of the United States v. Dunn*, 6 Peters 51.

Morse in his work on Banks and Banking 152, says: " The key note to the whole subject lies in this; that the office of the cashier is strictly executive. He is the business officer of the bank, but in the sense of one who transacts the business, not of one who regulates and controls it. They (directors) are the mind and he (cashier) is the hands of the corporation. They may decide to make a certain loan or discount, to sell or mortgage corporate property; he will pay over the money, take the borrower's promissory note, and see that it is in proper form; he may, by direction of the board, affix the corporate signature and seal, and make delivery on behalf of the corporation, of all instruments necessary to complete the conveyance or the mortgage."

In the *United States v. City Bank of Columbus* (21 How. 360), the cashier of the bank wrote the following letter to the secretary of the treasury, to-wit:
" *City Bank of Columbus.*

"SIR:—The bearer, Col. Wm. Miner, *a director* of this bank, is authorized, on behalf of this institution, * * * if consistent with the rules of the treasury department, to contract on behalf of this institution for the transfer of money from the east to ᐧ the south or west, for the government. * * * Thomas Moodie, cashier." This letter was copied in the letter press book of the bank. A by-law of the bank provided: "A committee of two shall be appointed every six months to advise with the president and cashier. In their absence all the ordinary business of the bank may be done by the president and cashier, and if either of them be not present, then by the *other alone.*"

Upon the faith of this letter the secretary made a contract for the transmission of $100,000 from New York to New Orleans, and delivered the same to Mr. Miner, who converted it to his own use and failed to account to the goverment.

The supreme court of the United States held that the contract was void, and that the cashier had not the power to bind the bank and rendered judgment for the defendant. In this case (marg. p. 364) the court says: His acts to be binding must be "within the ordinary course of his duties. He is an executive officer and his ordinary duties are to keep the funds, notes, bills and other choses in action to be used * * * for the * * * exigencies of the bank. * * * The term, ordinary business, with direct reference to the duties of cashiers of banks, occurs frequently in English cases and in the reports of the decisions of our state courts, and in no one of them has it been judicially allowed to comprehend a contract made by a cashier without an express delegation of power from a board of directors to do so, *which involves the payment of money*, unless it be such as has been loaned in the usual and customary way. Nor has it ever been decided that a cashier could purchase or *sell the property or create an agency of any kind* for a bank, which he had not been authorized to make by those to whom has been confided the power to manage its business, both *ordinary and extraordinary.*"

In *Bank of United States v. Dunn* (6 Peters), the president and cashier of the bank had released an endorser, and when sued he offered to prove the release, and the court (6 Peters, marg. p. 59, 60), said: "But the most decisive objection to the evidence is that the agreement was not made with those persons who have power to bind the bank in such cases.

"It is not the duty of the cashier and president to make such contracts, nor have they the power to bind the bank, except in the discharge of their ordinary duties. * * * *Nor would it be bound if the assurances had been made in so specific and direct a manner*

*as to create a personal responsibility on the part of the cashier and president."* To the same effect is *Shryock v. Baschore* (82 Pa. St. 159).

As stated plaintiffs fail to show a ratification. For it must be remembered that the making of the deed and carrying out the sale, is no evidence of a contract with plaintiffs to negotiate the sale, and to pay the commission ; for the only officer with whom the plaintiffs had anything to do, denied from the start that they had made the same, or were instrumental in bringing it about. And the other officers, except Robert, knew nothing of it whatever, till sometime afterwards. Robert only knew of the claim, after the sale had been effected and agreed upon, but before the deed was made. But he only knew of it as a claim disputed by the cashier. Under such circumstances there could not have been a ratification. To affirm that one can ratify an act of which he is ignorant, is a contradiction in terms.

In *Baldwin et al. v. Burrows et al.* (47 N. Y. p. 211, 212), the court says : "There can be no ratification of an act without knowledge of the act having been done. The ratification of an act previously unauthorized must, in order to be binding, be made with a full knowledge of all the material facts. The receipt, even from an agent, of money paid him on a contract doesn't bind the principal to the contract unless he knows on what account the money was received and the terms of the contract. The mere fact that the proceeds of a contract made by one person in the name of another without authority is not of itself sufficient to render him liable on the contract. To have that effect the proceeds must be received not only with the knowledge, but under such circumstances as to constitute a voluntary adoption of the contract."

In *Moore's Ex. v. Patterson* (28 Pa. St. 505), the court held, "It is error to submit to the jury the question of whether the party subsequently ratified the act of a person acting without authority, where there is no evidence that the facts were even communicated to the

party, or that he assented to the acts alleged to be done for him."

It is true that a corporation may, by a course of conduct with its officers and the public, give them authority, and confer upon them, powers they would not have as such officers, but for the usages of the corporation. It is common, and perhaps under the ruling of Judge Bliss in *Western Bank v. Gilstrap* (45 Mo. 419), it would be within the powers of a cashier, to employ an attorney for the prosecution or defence of a suit brought by or against the bank; this upon the ground that it is necessary for the protection of those interests covered by his recognized duties as cashier. But that does not meet the case or question here.

The plaintiffs failed, in our opinion, to make out a case, and we would be correct, perhaps, in reversing the judgment without more; but to afford plaintiffs the opportunity to meet the requirements of law by additional proof, if they have it, the judgment is reversed and the cause remanded to be proceeded with in conformity with this opinion. All concur.