STEUNKLE & MANAWAL, Respondents, v. THE CHICAGO, SANTA FE AND CALIFORNIA RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, November 10, 1890.

Principal and Agent: RATIFICATION: ACCOUNT : PARTIAL PAYMENT. The ratification of an agent's act, previously unauthorized, must, in order to be binding, be made with a full knowledge of all the material facts. And where a railway company makes a partial payment on a merchant's account for goods furnished its employes under an unauthorized arrangement with its foreman such payment, in order to constitute a ratification, must have been accompanied by full knowledge of the terms of the engagement of such foreman, and knowledge of the extent of the bill is not sufficient.

*Appeal from the Linn Circuit Court.*—HON. G. D BURGESS, Judge.

REVERSED.

*Gardiner Lathrop, A. W. Mullins* and *S. W. Moore,* for appellant.

Ratification by a principal of an unauthorized contract of an agent cannot be inferred except after knowledge of all the material facts, including the terms of the contract, is brought home to the principal. 2 Waterman on Corp., p. 384 ; *Windsor v. Bank,* 18 Mo. App. 675 ; *Hyde v. Larkin,* 35 Mo. App. 365 ; *Middleton v. Railroad,* 62 Mo. 579 ; *Bank v. Gay,* 63 Mo. 33 ; *Railroad v. Kelley,* 77 Ill. 426, 437 ; Mechem on Agency, sec. 128.

*O. F. Libby* and *C. C. Bigger,* for respondents.

(1) The question as to whether the contract of Whitaker, appellant's agent, had been ratified by

appellant or whether he had authority to make such contract, or whether appellant had been fully advised of the nature and extent of the contract made by Whitaker as to all of its material facts and terms, especially after appellant had voluntarily paid the greater part of the money due on such contract, were questions of facts, and properly submitted to the jury to determine from the evidence and the issue in this case; and, as the evidence submitted to the jury tended to show ratification by payment, the demurrer to the evidence was properly overruled. When there is any evidence to sustain the issue it is proper to submit the case to the jury under proper instructions from the court. *McKown v. Craig*, 39 Mo. 156; *Winston v. Wales*, 13 Mo. 569; *Hake v. Buell*, 50 Mich. 89; *Mfg. Co. v. Shiley*, 15 Neb. 109; *Hall v. Railroad*, 48 Wis. 317. (2) Appellant could not reap the benefit of the contract made by Whitaker for them, and settle with their men with respect to the same, and pay part and repudiate part. They were bound to accept it as a whole or repudiate it as a whole, and as they adopted it by paying a part they should pay the bill here sued on. *Strisser v. Conklin*, 54 Wis. 102; *Savings Ass'n v. Morrison*, 48 Mo. 273; *Hall v. Railroad*, 48 Wis. 317; Wharton on Agency, sec. 89. (3) The instructions asked by the respondents were properly given and properly presented the law in the case, and were fully authorized by Wharton on Agency, sec. 89; *Hall v. Railroad*, 48 Wis. 317; *Savings Ass'n v. Morrison*, 48 Mo. 273.

GILL, J.—Plaintiffs are merchants at Bucklin, Missouri, on the line of defendant's railroad, and sued the defendant railroad company for goods alleged to have been furnished the men engaged on a construction train. The claim is that plaintiff entered into an arrangement with one Whitaker, the foreman of the construction gang, whereby it was agreed, in effect, that plaintiffs should let the men have goods, each to the amount of

$1.40 per day of the time they should work for the company, and that the defendant would pay for them. The extent of Whitaker's authority to bind the company is the principal matter at issue. On the trial below plaintiffs recovered, and defendant appeals.

· The evidence clearly establishes a want of express authority in Whitaker to pledge the credit of the railroad company for supplies thus furnished these employes. But, from the tenor of instructions given, it would seem that plaintiffs rely on a supposed ratification of the unauthorized acts of this foreman in charge of the men. It was the uniform custom of the company, in matters of this nature, where they had impecunious employes working on these trains, to permit the bosses to assist the grocery-dealers and boarding-house keepers in subjecting the wages of the men to the payment of supplies bought, or board furnished, while working for the company. This was accomplished by the merchant or boarding-house keeper limiting the amount of supplies and board furnished by the amount of wages in each case due the employes, and at stated times furnishing the company with the bills, and these would be paid (or collected) by the defendant deducting the respective sums from the wages due the men and turning it over to such merchants or boarding-house keepers. With that in view the company supplied a blank form for such bills to which was annexed a certificate to be signed by the dealer, which, after certifying to the correctness of the bill, stated "that it is in no sense a claim against the railway company, but is sent to C. S. Tuckerman of Chicago, with request that he will personally collect said amounts, and will at regular time pay over the amounts so collected to me."

It will be thus seen that the company, at most, was in such cases only assuming to act as a collector for those having claims against such employes. This appears, beyond question, as the only arrangement which Whitaker, the construction-train foreman, was

authorized to enter into. It seems that these plaintiffs supplied these hands with various amounts, aggregating, in round numbers, some five hundred and sixty-six dollars, of which, on the presentation of the bills, defendant paid three hundred and seventy-five dollars ( which was all there was owing the men ), and this suit is for the remaining one hundred and ninety-one dollars. It is claimed that, by making a payment of part of the bills thus rendered, the railroad company thereby ratified the unauthorized arrangement made by foreman Whitaker in the inception of the business, and the trial court seems to have so regarded the effect of such payment as it gave the following instruction to the jury :

"2. That the unauthorized acts of an agent, when ratified by the principal, are equally binding as though embraced within the scope of the agent's original authority, and, in this case, if you find, from the evidence, that the defendant paid a part of plaintiffs' bill without objection, with a full knowledge of its extent, then they will be held in law to have adopted the act of the agent contracting the same, even though he has no authority at first to contract for the same." The giving of this instruction was clearly erroneous. The mere payment of the three hundred and seventy-five dollars, as a portion of the bill for five hundred and sixty-six dollars, did not, of itself, amount to a ratification of the unauthorized contract, alleged to have been entered into by Whitaker. Such payment, in order to constitute a ratification, must have been attended by something more than full knowledge of the " *extent* " of the bill, but must have been accompanied by full knowledge of the *terms of the engagement* entered into by Whitaker. The company must have been fully informed that Whitaker had bought these goods and pledged the company's credit for the same. The ratification of an act previously unauthorized must, in order to be binding, be made with a full knowledge of all the material facts. *Windsor v. Bank*, 18 Mo. App. 665 ;

*Hyde v. Larkin*, 35 Mo. App. 365 ; Story on Agency, sec. 239. As aptly said in case cited by plaintiffs' counsel : "Whatever arrangement was made must have been known to the company when it paid the plaintiffs," or there can be no ratification. *Hall v. Railroad*, 48 Wis. 319.

When the defendant paid the three hundred and seventy-five dollars (it being all due the men) it was done, doubtless, in view of its usual course of business, to-wit, collecting for the plaintiffs to the full extent of all the company at the time was owing the employes, and believing, too, that Whitaker had agreed with the plaintiffs, as he was authorized, and had not transcended his instructions.

It is clear, from this record, that none of the employes referred to in the evidence—neither Whitaker, Booker nor Kimble—had any authority to make the contract relied upon, and hence no knowledge on their part that such an arrangement was made could bind the company in the direction of a ratification. The judgment is for the wrong party, and must be reversed. All concur.