BANK OF COMMERCE v. J. T. HART.

FILED JUNE 6, 1893.    No. 4892.

1. **Banks and Banking**: POWERS OF OFFICERS. The cashier of a banking corporation has, by virtue of his office, no authority to accept, in payment and discharge of a debt due the bank, certificates of the capital stock of an insurance company.

2. ———: ———: INVESTING IN STOCKS OF ANOTHER CORPORATION. A banking corporation, organized under the laws of this state, has no power to become a stockholder in an insurance company.

3. ———: ———. The acts of the directory of a banking corporation, in dealing with and investing the funds of the stockholders, to bind the bank, must be confined to the expressed purposes for which the bank was incorporated, and to purposes necessarily incidental thereto in the successful conduct of its legitimate business.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

John L. Webster, for plaintiff in error:

The cashier of the bank had no authority to buy shares of stock in the insurance company and pay for the same with funds of the bank, or to accept the same in payment of a note not due. (*Sandy River Bank v. Merchants & Mechanics Bank,* 1 Bissell [U. S.], 146; *Lamb v. Cecil,* 25 W. Va., 288; *United States v. City Bank of Columbus,* 21 How. [U. S.], 356.) One corporation cannot buy stock in another corporation unless the power to do so is clearly conferred by statute. (*Franklin Bank v. Commercial Bank,* 36 O. St., 355; *Franklin Company v. Lewiston Institution for Savings,* 68 Me., 43; *Mechanics & Workingmen's Bank v. Meriden Agency Co.,* 24 Conn., 159*; *Milbank v. New York, L. E. & W. R. Co.,* 64 How. Pr. [N. Y.], 20–29; *Central R. Co. v. Pennsylvania R. Co.,* 31 N. J. Eq., 475; *Sumner*

*v. Marcy*, 3 Woodb. & M. [U. S.], 105; *Central R. Co. v. Collins*, 40 Ga., 582; *Hazelhurst v. Savannah, G. & N. A. R. Co.*, 43 Ga., 13; *People v. Chicago Gas Trust Co.*, 130 Ill., 268; Morawetz, Private Corp., sec. 431; Cook, Stockholders, sec. 316.)

*J. M. Woolworth, contra.*

RAGAN, C.

The Bank of Commerce sued Hart on a note for $20,000, executed and delivered by him to the bank. The defense of Hart, so far as the same is material here, was, that on March 30, 1888, he paid on said note $14,105.46, with which payment the bank has not credited him. Hart claims to have made this payment by the sale of certain shares of stock in an insurance company to the bank through one Johnson, its cashier, who promised at the time to credit the note when it should be returned from New York, where it then was. The bank claims that the sale of said stock, if made, was to Johnson individually, and not to the bank; that it had no interest or part in said sale; that the same, if made, was without its knowledge or consent; and the purchase of the stock by its cashier, if made for the bank, was in excess of his authority, and void. The jury, by its verdict, allowed Hart the credit he claimed, thus, in effect, finding that the purchase of the insurance stock was made by t' e bank. Assuming for the purposes of this opinion that the evidence in the record supports this finding, we then proceed to inquire whether the cashier exceeded his authority in using funds of the bank in the purchase of this stock.

In *Sandy River Bank v. Merchants & Mechanics Bank*, 1 Bissell [U. S.], 146, the facts were: The cashier of the Mechanics Bank settled an account of $22,000 with the cashier of the Sandy River Bank by paying $10,000 cash and giving $12,000 private paper, which the cashier of the

Sandy River Bank accepted in payment, and gave a receipt in full.    The Sandy River Bank brought its action against the Merchants & Mechanics Bank on the account.    The latter pleaded payment by the contract with the cashier. The question in the case was whether the cashier had authority to receive in payment anything but money.    In the course of the opinion delivered the judge said: "A cashier of a bank is ordinarily the executive officer of the bank.    He is the agent through whom third persons transact their business with the bank.    The bank generally holds him out to the world as having authority to act according to the general usage, practice, and course of business, and all acts done by him within the scope of such usage, practice, and course of business bind the bank as to third persons who transact business with him on the faith of his official character; and perhaps it may be presumed without proof, and merely from his office, that he is authorized to receipt and discharge debts, and deliver up securities on payment or discharge of the debt for which they are held.    *    *    *    But still his authority is a *limited authority*, and when a party claims a discharge from a debt due the bank, not by payment, but by giving other or different notes, bills, or securities, which the cashier has agreed to take and release the debt, his authority, like that of any other agent, must be shown by proof.    As a general rule, a jury have not a right to infer that the cashier of a bank, as such, has the authority to compromise and discharge debts without payment or by taking other securities, but the authority from the bank must be shown expressly or by necessary implication, or it must    *    *    *    be established by the particular usage, or practice, or mode of doing business of the bank; or it must be ratified or acquiesced in by the bank in order to be binding."

In *United States v. City Bank of Columbus*, 21 How. [U. S.], 356, the facts were: The cashier of the Columbus bank gave to one of its directors, Miner, a letter to the secre-

tary of the treasury of the United States, to the effect that Miner had authority to contract in behalf of the bank for the transfer of money for the government. Relying upon this letter, the secretary of the treasury made a contract with Miner for him to transfer $100,000 of the government's money from New York to New Orleans. Miner received the money, but never delivered it. The United States brought suit against the Columbus bank to recover the money. The supreme court of the United States decided that the action could not be successfully maintained, as the cashier of the Columbus bank had no authority to make such a contract, and there was no proof that the board of directors had authorized it. In the course of the opinion Justice Swayne said: "The court defines a cashier of a bank to be an executive officer by whom its debts are received and paid, and its securites taken and transferred, and that his acts, to be binding upon a bank, must be done within the ordinary course of his duties.  *  *  * The term 'ordinary business,' with direct reference to the duties of cashiers of banks, occurs frequently in  *  *  * reports of the decisions of our state courts, and in no one of them has it been judicially allowed to comprehend a contract made by cashier, without an express delegation of power from a board of directors to do so, which involves the payment of money, unless it be such as has been loaned in the usual and customary way. Nor has it ever been decided that a cashier could purchase or sell the property, or create an agency of any kind for a bank which he had not been authorized to make by those to whom has been confided the power to manage its business, both ordinary and extraordinary."

The power of this bank to purchase stock in an insurance company, if it exists at all, is an extraordinary power and one not confided to the cashier, but belonging to the directory.

In the *Bank of Healdsburg v. Bailhache*, 65 Cal., 329,

it is said, that the power to make a settlement of defalcation to a bank, and accept a deed of real estate in satisfaction and release, is the function of the board of directors and not of any individual director or officer. .

It has also been decided that, in the absence of special authority, the cashier of a bank could not release the surety from a note owned by the bank. (*Merchants Bank v. Rudolf*, 5 Neb., 527; *Conchecho National Bank v. Haskell*, 51 N. H., 116.) That in the absence of special authority or established usage the cashier has no power to compromise claims due his bank. (*Chemical National Bank v. Kohner*, 8 Daly [N. Y.], 530.) That he had no authority to bind his bank by issuing a certificate of deposit to himself. (*Lee v. Smith*, 84 Mo., 304.) Nor bind the bank by an official indorsement of his own note. (*West St. Louis Savings Bank v. Shawnee County Bank*, 95 U. S., 557.)

The cashier of the Bank of Commerce, then, as the executive officer of the bank, was clothed with authority to collect all debts due the bank; but this means collections in money. If a cashier may discharge the debts due his bank by exchanging the evidences of them for stocks of an insurance company or a gas company, then he can, under the name and charter of the bank, conduct an entirely different business, and use the funds of his stockholders for a purpose for which they were never subscribed and in violation of the law of the bank's creation. The purposes for which the Bank of Commerce was organized, as expressed in its articles of incorporation, were to receive deposits of money and pay the same out on proper vouchers; to loan money on personal security; to issue drafts or letters of credit; to buy and sell securities of every kind, and do a general banking business. Had this charter expressly provided that the corporation might invest its funds in stocks of insurance companies and deal generally in stocks of other corporations, such a provision would have been

contrary to the laws of the state and void. But there is no provision in the bank's charter which, by any reasonable construction, can be construed into an authority to purchase and hold the stocks of any other corporation. True, it says "to purchase securities of every kind," but certificates of stock are not securities within the meaning of this provision, nor such as the word imports in commercial or banking phraseology. "Securities," as here used, mean notes, bills of exchange, and bonds; in other words, evidences of debt, promises to pay money. We conclude, therefore, that the cashier, by virtue of his office, had not the power to accept the stock of the insurance company in payment of the debt due the bank, but that power, if it existed, was lodged in the directory, and as it had not expressly authorized the cashier thereto, he exceeded his powers in agreeing to accept, on behalf of his principal, the insurance company stock in payment of the debt due from Hart to the bank, and that the latter is not bound thereby.

The next inquiry is as to the powers of the directory to ratify the purchase of the insurance company's stock and bind the bank thereby.

In the *Mechanics & Workingmen's Mutual Savings Bank & Building Association v. Meriden Agency Company*, 24 Conn., 159, it is said: "The first question is, whether the defendants, being a joint stock corporation, organized for a specific purpose, had power to become a stockholder in the association of the plaintiffs. The purpose for which the agency company united, as expressed in their articles of association, was to do a general insurance agency, commission, and brokerage business, and such other things as were incidental to, and necessary in, the management of that business. So far as that business was concerned, the proper officers of the company had power to act, and bind the company; but if they departed from that business, and entered into contracts not authorized by

the company, such contracts would not be binding. A subscription to the stock of a building association, has no legitimate connection with the business of an insurance agent, commission merchant, or broker, and was not therefore authorized by the defendants' articles of association. * * * But when the directors of the company subscribed for stock in a building association, whatever may have been their motive, * * * they transcended the powers conferred upon them, and departed from the legitimate business of the company."

In *Franklin Co. v. Lewiston Institution for Savings*, 68 Me., 43, it is said: "If a corporation can purchase any portion of the capital stock of another corporation, it can purchase the whole and invest all its funds in that way, and thus be enabled to engage exclusively in a business entirely foreign to the purposes for which it was created. A banking corporation could become a manufacturing corporation, and a manufacturing corporation could become a banking corporation. This the law will not allow, and it has been held that notes given by a manufacturing corporation for the purchase of shares in a bank are not collectible."

In Cook, Stockholders, sec. 316, it is said: "A banking corporation has, at common law, no power to purchase or invest in the stock of another corporation, whether that other corporation be itself a bank or of a different business. The bank is organized for the purpose of receiving deposits and loaning money, not for the purpose of dealing in stocks. Any attempt to engage in such transaction is a violation of its charter rights and of its duty towards the stockholders and the public."

In *Nassau Bank v. Jones*, 95 N. Y., 115, Chief Justice Ruger said: "The question involved in this case * * *. is the right of a banking corporation, chartered under the laws of this state, to subscribe for the stock of a railroad corporation. * * * It is clear that a banking corporation cannot enter into a contract of this character, unless it

has authority under its charter to become a subscriber for
the stock of railroad corporations, and thereby assume the
obligations to which such stockholders are subject.     *    *
The plaintiff is a moneyed corporation organized under
chapter 260 of the Laws of 1838, and authorized by that
statute 'to carry on the business of banking, by discounting
bills, notes, and other evidences of debts; by receiving de-
posits; by buying and selling gold and silver bullion, for-
eign coins and bills of exchange, and by loaning money on
real and personal property.' The legislature intended by
the act in question to inaugurate in this state an entirely
new system of banking, and thereby undertook to provide
for the establishment of moneyed corporations which
should furnish to the public a safe and reliable circulating
medium for the transaction of its business, and secure and
solvent depositaries for the custody of such moneys as were
needed for current use by the business public.     *    *    *
The language employed in the act    *    *    *   excludes,
by necessary implication, the capacity to carry on any other
business than that of banking, and the adoption of any
other methods for the prosecution of such business than
those especially pointed out by the statute.     *    *    *   The
spirit of the law, as well as a sound public policy, forbid
these institutions from risking moneys entrusted to their
care in doubtful speculations or enterprises.     *    *    *
For these reasons, we are of the opinion that the plaintiff
was not only precluded by public policy, but was not au-
thorized by the statute under which it was organized, to
enter into any engagement as a stockholder in a railroad
corporation."

The learned judge who presided at the trial below charged
the jury as follows :

"*a.* In investigating the question as to how far, if at all,
the bank was bound by the acts of Johnson in the prem-
ises, you will be governed entirely by the testimony which
has been adduced before you on the trial. If you shall

find from the testimony either that Johnson, in his nego-
tiations with Hart, and his final agreement with him for
the purchase of the shares of stock in the insurance com-
pany, was acting under authority conferred upon him in
that behalf by the board of directors of the bank, or that,
subsequently to the transaction, the directors approved and
ratified what had been done by Johnson, acting in his ca-
pacity as cashier of the bank, if you shall find that in such
transaction he did act as such cashier, and accepted the fruits
of such transaction, then, and in that case, the bank would be
estopped to deny the authority of Johnson in the premises,
and would be bound by his acts in that behalf.

"*b.* If, on the other hand, you shall find from the testi-
mony that Johnson did not have authority from the board
of directors of the bank to negotiate for and purchase the
shares of stock in the insurance company referred to in the
testimony, and that the directors did not subsequently ap-
prove and ratify the acts of Johnson relating thereto, nor
accept and retain the fruits of such negotiation and pur-
chase, then, and in that case, the bank would not be bound
by what Johnson did relating to such negotiation and
purchase, and in such case the plaintiff would be entitled
to your verdict for the amount of the note sued on and
interest."

This charge proceeded upon the theory that though the
purchase of the insurance company's stock by the cashier
was unauthorized, yet the board of directors could have
afterwards ratified and adopted it and bound the bank by
it. We do not assent to this doctrine as applied to this
case. It is doubtless true that the bank could legally take
the stock of another corporation as security for a debt pre-
viously contracted. Possibly it might make a loan on the
strength of the stock as security at the time. On this point
the authorities are not in harmony, and as it is not material
here we do not decide it. An emergency might arise when
a bank's board of directors would be justified in taking the

Bank of Commerce v. Hart.

stock of another corporation in settlement, adjustment, or compromise of a doubtful claim or debt, acting in the honest belief that only by so doing could a serious loss to the bank be averted. None of these reasons, however, existed in the case at bar, or if they did the record before us does not disclose them. The cashier had no authority to bind the bank by buying the insurance company's stock. The board of directors had no authority to authorize him to do so; and, if the cashier bought such stock in behalf of the bank, the directory had no authority to ratify the purchase and thus bind the bank. But assuming the charge states the law correctly, there is no evidence in the record that the board of directors ever authorized the cashier to purchase the insurance stock, and none that the board of directors ever ratified such a purchase, if made, or that the bank accepted the fruits of the transaction, and the jury could not, from the evidence, so find either. We conclude, then, that the powers of a directory of a bank in dealing with and in investing the funds of the stockholders are limited to the purposes for which the bank was incorporated and to purposes necessarily incidental thereto in the successful conduct of its legitimate business.

We are constrained to say that the verdict of the jury is not supported by the evidence, and that the judgment of the court is contrary to the law of the case. The judgment of the district court is therefore reversed and the case remanded for further proceedings.

REVERSED AND REMANDED.

THE other commissioners concur.