(July 28, 1910.)

## G. SPONGBERG, Appellant, v. FIRST NATIONAL BANK OF MONTPELIER, Respondent.

[110 Pac. 716.]

Specification of Error—Powers of the Bank Cashier—Ratification of Unauthorized Act of Cashier.

(Syllabus by the court.)

1.   *Held,* that under the facts of this case the specifications of insufficiency of evidence to sustain the decision are sufficient to authorize and require the court to examine the evidence on appeal.

2.   In contemplation of law, the leasing of property belonging to a national banking association is not within the ordinary powers and duties of the cashier of the bank.

3.   Where the cashier of a national bank has entered into a contract to lease certain of the bank property for a term of years and it does not appear that he had any express authority from the board of directors to do so, but it does appear that the contract signed by the cashier and the lessee has been in possession of the bank for eighteen months, and that at least a majority of the directors of the bank had knowledge of the contract and its terms and conditions, and that the cashier was exercising the power and authority of leasing the bank property, and especially vacant rooms in the bank building, and that the bank's building committee or its board of directors made changes in the plans and specifications of its building on the suggestion of the lessee and incorporated the same in the building as erected, and finished the room to be occupied by the lessee in accordance with his request and suggestions, and the board of directors never repudiated the contract or notified the lessee that they would not live up to the same until after the expiration of eighteen months and the completion of the building, *held,* that such acts and conduct on the part of the board of directors amounted to a ratification of the action of the cashier and rendered the contract entered into by him the contract of the bank.

APPEAL from the District Court of the Fifth Judicial District of the State of Idaho, in and for the County of Bear Lake.   Hon. Edward A. Walters, Judge of the Fourth Judicial District, presiding.

Action for specific performance. Decree for defendant, and the plaintiff appealed. *Reversed.*

T. L. Glenn, for Appellant.

The plaintiff claims that E. A. Burrell, who entered into the contract for a lease with the plaintiff, being the vice-president, acting president, director and cashier of the defendant bank, member of the building committee for the erection of the bank building, and general manager and sole agent for the purpose of leasing and renting all the rooms in the said building, had authority to bind the defendant in the execution of the said agreement for a lease. (*Bank v. Dandridge,* 12 Wheat. 64, 6 L. ed. 552; *Martin v. Webb,* 110 U. S. 7, 3 Sup. Ct. 428, 28 L. ed. 49; *Caldwell v. Bank,* 64 Barb. (N. Y.) 333; *Bank of Vergennes v. Warren,* 7 Hill (N. Y.), 91; *Payne v. Commercial Bank,* 6 Sm. & M. (Miss.) 24; *State v. Commercial Bank,* 6 Sm. & M. (Miss.) 218, 45 Am. Dec. 280; *City Bank v. Perkins,* 4 Bosw. (N. Y.) 420.)

The act of an officer of a corporation is the act of the corporation. (*Carroll v. St. John Society,* 125 Mass. 565; *Cohn v. Borst,* 36 Hun (N. Y.), 562; 12 Am. & Eng. Ency. 997, note 8.)

A lease by an officer of the corporation is ratified by the silence of the directors. (Clark & Marshall, Corp., p. 3774, sec. 716.)

Acts of officers are binding unless timely steps are taken to disaffirm such contracts. (Elliott, Private Corp., pp. 204, 206; *Augusta T. & G. R. Co. v. Kittel,* 52 Fed. 63, 2 C. C. A. 615; *Penn. Ry. v. Keokuk & H. Bridge Co.,* 131 U. S. 317-381, 9 Sup. Ct. 770, 33 L. ed. 157; *Fitzgerald etc. Const. Co. v. Fitzgerald,* 137 U. S. 109, 11 Sup. Ct. 36, 34 L. ed. 608; *Indianapolis Rolling Mill v. St. Louis etc. R.,* 120 U. S. 256, 7 Sup. Ct. 542, 30 L. ed. 639.)

Long acquiescence with full knowledge of the situation amounts to a ratification. (*Egan v. Grece,* 79 Mich. 629, 45 N. W. 74, 77; 7 Words and Phrases, 5931; *Duggan v. Pacific Boom Co.,* 6 Wash. 593, 36 Am. St. 182, 34 Pac. 157; *Hoosac*

*Min. & Mill Co. v. Donat,* 10 Colo. 529, 16 Pac. 157; *Williams: v. Uncompahgre Canal Co.,* 13 Colo. 469, 22 Pac. 806; *Currie v. Bowman,* 25 Or. 364, 35 Pac. 848.)

Clark & Budge, for Respondent.

"The brief of appellant must contain a distinct enumeration of all errors relied on." (*Nelson Bennett Co. v. Twin Falls Land & Water Co.,* 14 Ida. 5, 93 Pac. 789; *Kyle v. Craig,.* 125 Cal. 107, 57 Pac. 791; *Penny v. Fellner,* 6 Okl. 386, 50 Pac. 123; *First Nat. Bank v. Brown,* 20 Utah, 85, 57 Pac. 877.)

"Where appellant's brief contains no specifications of error as required by supreme court rule, the judgment will be affirmed." (*Hickey & Co. v. Kaufman,* 34 Mont. 106, 85 Pac. 870; 1 Dec. Dig. sec. 758 (1), and cases cited; *Smith v. Alphin,* 150 N. C. 425, 64 S. E. 210; *Ferguson v. Bank* (Okl.),. 99 Pac. 641; *Lehane v. Railway Co.,* 37 Mont. 564, 97 Pac. 1038; *Kansas etc. Livestock Co. v. Hartstein,* 6 Kan. App. 864,. 50 Pac. 510.)

Appellant's brief discloses that no attempt has been made to assign or specify any errors whatsoever. He simply argues. the case as a whole without calling attention to any particular finding or findings, or any particular ruling upon the evidence. This is not sufficient to entitle him to a consideration by the court of errors committed, if there happen to be any in the record. (*Hannan Bros. v. Waltenspiel,* 29 Utah, 466,. 82 Pac. 859.)

The appellant must specify particularly the particulars in which the evidence is insufficient before the court will concern itself with the question as to whether or not the decision is justified by the evidence. (Rev. Codes, sec. 4428; *Gaffney v. Hoyt,* 2 Ida. 199, 10 Pac. 34; *Hollister v. State,. 9 Ida. 8,. 71 Pac. 541.)

The following specification, "The evidence as a whole is: insufficient upon which the decision is rendered, and the judgment made and entered thereon," is not sufficient to authorize the court to examine the evidence to find out whether. it sus--

tains the decision. (*Parker v. Reay,* 76 Cal. 103, 18 Pac. 124; *In re Strock,* 128 Cal. 658, 61 Pac. 282; *Hughes v. Meehan,* 84 Minn. 226, 87 N. W. 769; *Van Pelt v. Park,* 18 Utah, 141, 55 Pac. 381.)

The other so-called specifications are mere recitals of what appellant contends the evidence shows, but are not specifications of the particulars in which the evidence is insufficient.. (*Ball v. Gussenhoven,* 29 Mont. 321, 74 Pac. 871.)

The particulars in which it is claimed the evidence is insufficient must be pointed out. (*Robson v. Colson,* 9 Ida. 215, 72 Pac. 951; *Hole v. Van Duzer,* 11 Ida. 79, 81 Pac. 109.)

The alleged specifications should, because of their insufficiency, be disregarded. (*Humphrey v. Whitney,* 17 Ida. 14, 103 Pac. 389.)

The officers of the corporation, as such, have no power to bind it by assuming to enter into obligations or contracts important and far-reaching in their effect without the direction and authorization of the board. (*Tulley v. Citizens' Bank,* 18 Ind. App. 240, 47 N. E. 850; *Grant v. Railroad Co.,* 66 Minn. 349, 69 N. W. 23; *Bank of Commerce v. Hart,* 37 Neb. 197, 40 Am. St. 479, 55 N. W. 631, 20 L. R. A. 780; *Dycus v. Traders' Bank & Trust Co.* (Tex. Civ.), 113 S. W. 329; *United States v. City Bank,* 21 How. (U. S.) 356, 16 L. ed. 130.)

To justify the acts of an agent of a corporation to enter into contracts for it, the authority by resolution is an indispensable requirement in order to make the contract binding. (*Johnson v. Sage,* 4 Ida. 758, 44 Pac. 641; *Barney v. Pforr,* 117 Cal. 987, 48 Pac. 989; *Salfield v. Land Co.,* 94 Cal. 546, 29 Pac. 1105; *Alta Min. Co. v. Alta Placer Co.,* 78 Cal. 629, 21 Pac. 373; *Nason v. Lingle,* 143 Cal. 363, 77 Pac. 71.)

AILSHIE, J.—A motion has been made to strike from the transcript certain portions thereof on various grounds, the principal one of which is that the statement contains no enumeration of errors or specifications of the insufficiency of the evidence to sustain the decision of the trial court. The

specifications of insufficiency of evidence are to the following effect: "(1) That the evidence as a whole is insufficient upon which the decision is rendered and the judgment made and entered. (2) The evidence shows that, etc." This is followed with some five pages of recital as to what the evidence does show and which statements, if correct, would clearly show the appellant entitled to judgment in his favor, and would likewise show that the defendant was not in fact entitled to the judgment it recovered in the trial court. The objections made to these specifications fall under the provisions of sec. 4428 of the Rev. Codes. The statute provides that, "When the exception is to the verdict or decision, upon the grounds of the insufficiency of the evidence to sustain it, the objection must specify the particulars in which such evidence is alleged to be insufficient. The objection must be stated, with so much of the evidence or other matters as is necessary to explain it, and no more." It is contended by counsel for respondent that the specifications are wholly insufficient, for the reason that they fail to point out the particulars in which the evidence fails or is insufficient, and, on the contrary, purport to set out what the evidence does show. Many authorities are cited in support of this position. (*Gaffney v. Hoyt*, 2 Ida. 199, 10 Pac. 34; *Hollister v. State*, 9 Ida. 8, 71 Pac. 541; *Van Pelt v. Park*, 18 Utah, 141, 55 Pac. 381; *Ball v. Gussenhoven*, 29 Mont. 321, 74 Pac. 871; *Parker v. Reay*, 76 Cal. 103, 18 Pac. 124; *In re Strock*, 128 Cal. 658, 61 Pac. 282; *Hughes v. Meehan*, 84 Minn. 226, 87 N. W. 769.)

It is the common practice, and that which is apparently contemplated by the statute and court rule, for the appellant to specify the particular things that he conceives it was necessary for the adverse party to prove and which he has failed to prove, and thereby call the attention of the court and the opposing counsel to the specific insufficiency of the evidence or lack of evidence in the case. That practice is very important, and essential in cases where the evidence is composed of a great many parts or circumstances, and the appellant contends that some one or more of those parts or

some particular circumstance that was essential to the recovery is lacking. In such case it is quite important that the complaining party should point out the particular circumstance or matter that in his opinion is lacking in order to sustain the verdict and judgment.

In this case the decision clearly went against the appellant on the ground of want of authority on the part of the cashier of the bank to execute the contract in question. When reduced to the last analysis, this is in fact the only question in the case. The appellant claims that this fact was abundantly and overwhelmingly established. He has, therefore, made his specification set forth that these facts did exist and that yet the decision went against him. This is the question that is argued all the way through the briefs. Neither the opposing counsel nor the court can in any way be misled or discommoded by the method pursued in this particular case. In order for the court to determine whether or not the judgment in the case was entered in favor of the proper party, it is necessary for us first to determine what facts should have been established by the plaintiff to entitle him to recover. It is next essential for us to determine what facts have been established, and after determining these two things the court will determine whether or not there was anything lacking in order to entitle the plaintiff to recover.

Under the facts and condition of the record in this case, it would be entirely too technical for the court to sustain the motion and strike the bill of exceptions and statement from the record. The motion should be denied, and it is so ordered.

Turning now to a consideration of the case on its merits, we find that the only real question of importance to be determined is whether or not the cashier of the respondent bank had authority to execute the contract involved in this case. On the 3d day of April, 1906, the cashier of the respondent, the First National Bank of Montpelier, addressed to appellant the following communication:

"TIM KINNEY,          E. A. BURRELL,          E. A. BURRELL,
    President.          Vice-President.          Cashier.

Stockholders:
Tim. Kinney,                          No. 7381.
E. A. Burrell,
G. G. Wright,
L. S. Hills,          THE FIRST NATIONAL BANK
Geo. T. Odell,
George Romney,
James Redman,              of Montpelier, Ida.
H. A. Gill,
L. B. Leverich.
                      Montpelier, Idaho, April 3, 1906.
Mr. G. Spongberg, City.

Dear Sir: This letter is written to confirm a verbal agreement had with you yesterday, wherein we agree to rent to you the side room in our Bank building at $40.00 per month for a term of five years from the time when we will be able to have it finished so that you can occupy it; this to include heating and supply of water, provided we are able to secure the water from the City, otherwise we will provide you with a pump. You will please indicate your acceptance on the carbon copy herewith enclosed, on the understanding that a lease in conformity with this agreement is to be made up and delivered to you when the building is ready for occupancy.

Of course, it is understood that if anything should intervene to prevent our erecting the building we now have in contemplation, this contract is of no force and effect.

Yours truly,

E. A. BURRELL,
Cashier."

EAB/EH.

On the next day the appellant wrote on the lower left-hand corner of the letter the following: "Montpelier, Ida. 4/4-1906. Accepted. G. Spongberg."

The bank appointed E. A. Burrell, who is one of its directors, its vice-president and cashier, and James Redman, a stockholder, as a building committee, and thereafter the bank, acting through its committee, erected the bank building referred to in the foregoing communication. During the time of the construction of this building appellant was about the building frequently, as stated by some of the witnesses "every

few days,'' and from time to time he made suggestions as to changes and alterations that he would like to have made in the part of the building which he had agreed to rent. Most, if not all, of these suggestions were adopted by the bank and were made by the contractor in course of its construction. This included changes in stairways, windows, ventilation, and also included the laying of some pipe in the basement, which Spongberg furnished, for the purpose of affording a drainage for a soda fountain which he contemplated placing in the basement of the building. They also left a door unpainted on which Spongberg was to have his business sign painted.

Matters went along this way from time to time for about eighteen months, and until the month of October, 1907, both appellant and respondent apparently acting on the theory that appellant either was or should be the lessee of certain rooms in the building. In October, 1907, the bank caused a lease to be drawn and presented to Spongberg for his signature. This lease was in substantial compliance with the agreement of April 3, 1906, and the understanding had between the cashier and Spongberg, with the exception of paragraph 7 of the lease, which is as follows: ''7. That the lessor, The First National Bank, may terminate this lease at any time by giving the said lessee, G. Spongberg, sixty days' notice in writing.'' This provision was not satisfactory to the appellant, and he refused to sign the lease on that ground, and the bank, on the other hand, refused to let appellant into possession of the premises. This action followed for the purpose of procuring specific performance of the contract. Findings and judgment were entered in favor of the defendant and plaintiff appealed.

In the first place, our attention is called to the provision of sec. 5145 of the Rev. Stats. of the United States, which provides that the affairs of each national banking association shall be managed by not less than five directors, who shall be selected by the shareholders. Counsel contend that under the provisions of this statute and the decisions of the courts, construing the powers and authority of the officers of national banks, the cashier in the case at bar had no power to enter

into a contract for the leasing of the premises in question unless he was first authorized so to do by a vote of the directors of the bank.

Counsel cite *United States v. City Bank of Columbus*, 21 How. (U. S.) 356, 16 L. ed. 130, as authority for the contention that the leasing of the property of a bank is outside of and beyond the usual and ordinary business and duty of the bank cashier. The court there said:

"The court defines the cashier of the bank to be an executive officer, by whom its debts are received and paid, and its securities taken and transferred, and that his acts, to be binding upon a bank, must be done within the ordinary course of his duties. His ordinary duties are to keep all the funds of the bank, its notes, bills, and other choses in action, to be used from time to time for the ordinary and extraordinary exigencies of the bank. He usually receives directly, or through the subordinate officers of the bank, all moneys and notes of the bank, delivers up all discounted notes and other securities when they have been paid, draws checks to withdraw the funds of the bank where they have been deposited, and, as the executive officer of the bank, transacts most of its business. . . . .

"Nor has it ever been decided that a cashier could purchase or sell the property, or create an agency of any kind for a bank which he had not been authorized to make by those to whom has been confided the power to manage its business, both ordinary and extraordinary." (Followed in *Windsor v. Lafayette Co. Bank*, 18 Mo. App. 665.)

This may well be accepted as the general rule of law applicable in such cases. (*Bank of Commerce v. Hart*, 37 Neb. 197, 40 Am. St. 479; 55 N. W. 631, 20 L. R. A. 780; *Taylor v. Bank of N. Y.*, 174 N. Y. 181, 95 Am. St. 564, 66 N. E. 726, 62 L. R. A. 783.) This rule, however, is not without a great many exceptions. For instance, the cashier or other officer of the bank may act without the scope of his authority and in a matter to which he is not authorized, and yet the bank may subsequently act in such a manner with reference to the particular transaction or subject matter as to amount to a

ratification of the unauthorized action of the cashier or other officer, or it may take such affirmative action in accepting the benefits and fruits of the transaction as to preclude it from thereafter questioning or denying the authority of the officer to act for it. It may also remain silent and inactive at a time when good faith would have impelled it to have spoken up and disclaimed the unauthorized act of its officer. In these and many other instances that might be mentioned the unauthorized action of the cashier or other officer of the bank may become, in presumption and contemplation of law, the act of the bank itself. (Zane on Banks and Banking, sec. 105; *Martin v. Webb,* 110 U. S. 7, 3 Sup. Ct. 428, 28 L. ed. 49.)

While it may be, and we think usually is, the ordinary *practice* for the cashier of the general average of banks to do the leasing of any of its extra rooms or banking-house, still as a matter of law we take it to be well settled, as indicated by the foregoing authority, that the selling or leasing of the bank property is outside of the ordinary business and duties of the cashier unless he is specially authorized so to do. For the purposes of the present case, it may be conceded, and we shall assume, that the contract of April 3, 1906, by which the cashier of the respondent bank assumed to contract for the leasing and letting of these rooms for a period of five years was outside and beyond the usual and ordinary duties and authority of the cashier. We shall, therefore, examine the facts as disclosed by the record for the purpose of ascertaining whether or not the bank authorized this contract, or if not, whether it subsequently ratified the same by any act or conduct of its board of directors. In the first place, it is testified positively by the cashier that no such authority was granted to him prior to the execution of his contract. We must therefore look to the evidence to ascertain if there was ever any acquiescence or ratification which would bind the corporation. We are clearly satisfied that all the facts and circumstances testified to and disclosed by the record tend to the inevitable conclusion that the directors of the bank were informed of this contract, and that they so acted with reference thereto as to bind the bank and to make the contract that of the bank.

Those circumstances briefly are: Mr. Burrell was one of the five directors of the bank; he was vice-president of the bank, and he was cashier of the bank. He apparently wrote this letter and signed it in duplicate as ''cashier'' of the bank, mailed it to Spongberg, and on the following day its terms were accepted by Spongberg, who indorsed his acceptance on either the original or the duplicate and signed his name thereto and returned the same to the bank. This contract, with appellant's acceptance indorsed thereon, was in the possession of the cashier, and therefore in the possession of the bank, from about the 4th day of April, 1906, until the trial of this cause. This fact alone would raise the presumption that the directors had knowledge of the contract and its contents. It is the duty of the directors to examine the papers and effects of the bank and to familiarize themselves with its business and affairs. It is fair to presume that they examined this in the course of eighteen months.

The directors also appointed Burrell and Redman as the building committee. The acts of this committee in the discharge of their duties were the acts of the bank. Either the directors themselves or this building committee accepted and adopted the plans and specifications for the building and awarded the contract. After the building was under course of construction they allowed the appellant to propose from time to time changes in the plans for the particular rooms that he had agreed to lease. The committee or the board of directors accepted these suggestions and caused the changes proposed to be made and so directed their contractor. This fact alone is evidence that the building committee or the whole board of directors, one or both, recognized Spongberg as a lessee of these rooms and that when completed he would occupy them as a tenant. They would certainly not have made changes in the construction of these rooms on the mere suggestion of a stranger and one who had no interest in them. They were clearly making these changes for the benefit of a prospective tenant.

The evidence also shows that Gill, another director, had knowledge of this contract, and that Gill stated to the attorney

for appellant about the time of the commencement of this action that the letter and contract of April 3, 1906, was in fact submitted to the board of directors. There is no evidence in the record that this letter and contract was *not* submitted to the board of directors. Mr. Burrell, the cashier, says that it was called to the attention of the board of directors but does not remember at what time this was done. He does say, however, that they finally concluded that they would not consent to it for the full five-year period without retaining to themselves the option to terminate the lease on shorter notice. On the other hand, whatever the board of directors may have said among themselves or determined upon, they never repudiated this contract or notified appellant that they would not live up to it until in October, 1907, or some eighteen months after the execution of the original contract.

Further, it appears by the testimony of the cashier himself that he had exercised full control and authority in the leasing of the bank property, that he had leased all the rooms that had been leased. He says, however, that the other tenants were renting from month to month and that this was the only lease for a term of years. He also says that he had made it his business to find tenants for all the spare rooms in the building.

It is clear to us that a majority of the directors, if not the whole board, were aware of the contract and its terms as it had been made by the cashier of the bank. All the subsequent acts of the board and each of its directors indicated approval rather than disapproval until the building was finally completed and the formal lease was drawn eighteen months after the original contract. These circumstances amount to a ratification of the original action of the cashier, whatever his authority may have been in the first place.

It was very aptly said by the supreme court of the United States in *Martin v. Webb, supra,* and that observation is equally apt here, that: "Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise

reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business.'"

After viewing the whole case in the light of the legal and equitable rules applicable to such facts and circumstances as are shown, we conclude that the findings and judgment of the trial court should have been in favor of the appellant. The judgment is therefore reversed and the cause is remanded, with direction to the trial court to make findings and enter judgment in accordance with the views herein expressed. Costs awarded in favor of appellant.

Sullivan, C. J., concurs.