## SMITH et al. v. FIRST NAT. BANK OF ANADARKO.

No. 10798—Opinion Filed May 3, 1921.

(Syllabus.)

1. **Banks and Banking—National Banks—Authority of Officers—Ratification of Acts.**

Section 5145, Revised Statutes of United States, provides that the affairs of each national banking association shall be managed by not less than five directors. who shall be elected by the shareholders. This rule, however, is not without many exceptions. For instance, the vice president, cashier, or other officer of the bank may act without the scope of his authority and in a matter to which he is not authorized, and yet the bank may subsequently act in such a manner with reference to the particular transaction or subject-matter as to amount to a ratification of the unauthorized action of such officer, or it may take such affirmative action in accepting the benefits and fruits of the transaction as to preclude it from thereafter questioning or denying the authority of the officer to act for it. It may also remain silent and inactive at a time when good faith would have impelled it to have spoken up and disclaimed the unauthorized act of its officer. In these and many other instances that might be mentioned, the unauthorized action of such officer of the bank may become, in presumption and contemplation of law, the act of the bank itself.

## 2. Oil and Gas—Lease Contract—Compliance by Lessee.

The plaintiff executed an oil and gas lease on certain lands in section 20 for a term of five years from the date thereof, and as long thereafter as oil and gas or either of them should be produced from said land by the lessee. It was further provided that, unless actual operations for drilling were begun within six months from the date of the lease, and within two and one-half miles of section 19 in the same township and range, and work prosecuted with due diligence until a well was completed, the lease should become null and void. After the execution of the lease, the same, together with a release, was deposited in escrow with a letter of instructions signed by lessor and lessee, which provided that the release was to be held by the depository for a period of six months; and, if said lessee or his assigns failed to begin active drilling operations according to the terms of the lease within the period mentioned in the letter, the papers were to be returned to the lessor. The lessee transferred his entire interest in the lease to other parties, and afterwards, by assigning other leases to the Star Oil Company, induced the latter to drill the well within two and one-half miles of section 19, and within the six months. Held, there was a substantial compliance with the terms of the lease and letter of instructions.

Error from District Court, Caddo County; Will Linn, Judge.

Action by the First National Bank of Anadarko against C. P. Smith and others to cancel oil and gas lease and quiet title. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Asp, Snyder, Owen & Lybrand, for plaintiffs in error.

Morris and Jameson, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Caddo county, Oklahoma, by the First National Bank of Anadarko, as plaintiff, against C. P. Smith, J. M. Hines, and the Indian Chief Oil & Gas Company, defendants, seeking to cancel and set aside a certain oil and gas lease covering the west half of the northeast quarter (N. E. ¼) of section twenty (20), township six (6) north, range nine (9) W. I. M., in Caddo county, Oklahoma, and to quiet plaintiff's title in said lands so far as any alleged interest of the defendants by virtue of said oil and gas lease was concerned. The judgment of the lower court was in favor of the plaintiff, from which defendants appeal.

The lease involved was executed on the 29th day of February, 1916, and was to remain in force for a term of five years from the date of its execution, and as long there-after as oil and gas or either of them should be produced from said land by the lessee.

It was further provided that, if no well was commenced on the said land on or before the 1st day of March, 1917, the lease should terminate as to both parties, unless the lessee on or before that date should pay or tender to the lessor, or to the lessor's credit, in the First National Bank at Anadarko, or to its successor, the sum of $80, which would operate as a rental and cover the privilege of deferring the commencement of a well for 12 months thereafter, and in like manner and upon like payment or tenders the commencement of a well might be further deferred for like period of the same number of months successively.

It was further provided that, unless actual operations for drilling were begun within six months from the date of the lease, and within two and one-half miles of section 19, township 6 north, range 9 west, and work prosecuted with due diligence until a well was completed, the lease should become null and void.

The lease, with a release, was placed in the Farmers State Bank of Cement, Oklahoma, in escrow, together with a letter of instructions. The material clauses contained in the letter of instructions are as follows:

"1. The lease is to be held by you until active drilling operations have been begun according to the terms of said lease, not longer than six months from this date; in which event you are authorized to deliver same to the lessee or assigns.

"2. The release is to be held by you for a period of six months from this date, and, if said lessee or his assigns fail to begin active drilling operations according to the terms of said lease within this period, you are authorized to return or deliver both the lease and the release of same to the lessor. Should the lessee or his assigns, after drilling operations have been begun, fail to prosecute same to completion and in good faith, then you are authorized to deliver the aforesaid release to the First National Bank of Anadarko, Oklahoma, lessor."

The main grounds relied upon by the plaintiff, seeking the cancellation of the lease, are two: First, that there was no authority shown for the execution of the lease by vice president and cashier of the plaintiff bank; and, second, that the letter of instructions confined the drilling of the well within two and one-half miles of section 19 to lessee Smith, or his assigns of the lease in controversy.

After hearing the evidence, the court made the following findings of fact and conclusions of law:

"1. That the lease entered into between the plaintiff and the defendant C. P. Smith, was in form and contents as set out in Exhibit 'A', attached to the plaintiff's petition.

"2. That said lease was by the lessor and lessee deposited in escrow with the Farmers State Bank of Cement, Oklahoma, the escrow instructions accompanying which were in form and contents with those set out in Exhibit 'B,' attached to plaintiff's petition.

"3. That active operations for the drilling of a well were not begun by C. P. Smith nor by his assignee of this lease within six months from the date thereof, and within two and one-half miles of section 19, township 6 north, range 9 W. I. M.

"4. That C. P. Smith, being the owner of a number of oil and gas leases within two and one-half miles of section 20, township 6 north, range 9 west I. M., in Caddo county, Oklahoma, assigned or caused to be assigned to the Oklahoma Star Oil Company leases covering an aggregate of approximately 1,800 acres to procure the said Oklahoma Star Oil Company to locate and drill a well which it contemplated drilling. in the Cement field, but outside the territory last above referred to, and upon which well commonly known as the Kuntzmiller well, active operations for drilling were begun within six months from the date of said lease by the Oklahoma Star Oil Company, and said well was by said Oklahoma Star Oil Company prosecuted with due diligence until the same was completed as an oil well producing oil in paying quantities."

Upon the foregoing findings of fact, the trial court decided the case in the following words:

"Wherefore, the court concludes as a matter of law that under the terms of the contract existing between the plaintiff and defendant C. P. Smith and his assignees, the obligation rested upon the said C. P. Smith or his assignees of this identical lease to begin active operations for drilling within six months from the date of said lease and within two and one-half miles from said section 19. township 6 north, range 9 west, I. M., and that because of the failure of the said C. P. Smith or his assignees of this identical lease to so begin within six months, said lease became null and void at the expiration of said six months from the date thereof.

"It is therefore ordered, adjudged and decreed by the court that the title of plaintiff be quieted in and to the following described real estate lying and situated in Caddo county, Oklahoma, to wit:

"The west half of the northeast quarter of section 20, in township 6 north, range 9 W. I. M."

The court made no finding as to the authority of the vice president to execute the lease, but, regardless of any finding on this point, inasmuch as plaintiff had instituted an action for the purpose of canceling a lease which purported to have been made by the plaintiff bank, the burden was on the plaintiff to show lack of authority on the part of L. W. Myers, vice president, and I. E. Cox, the cashier, to act for the bank. In the absence of any evidence in the record to the contrary, we indulge the presumption that the trial court had sufficient evidence before it to show that the lease was either authorized by the plaintiff, or that the act of the vice president was ratified, as the judgment failed to cancel the lease on this ground. The plaintiff having alleged in its petition lack of authority for the execution of the lease, and this allegation being denied by the defendants, the burden of the issue was cast upon the plaintiff. It is not claimed that all of the evidence has been set out in the record. The certificate of the trial judge shows that the record only contains a true and correct transcript of a certain portion of the evidence of C. P. Smith.

Section 5145, Revised Statutes of United States, provides that the affairs of each national banking association shall be managed by not less than five directors, who shall be elected by the shareholders. Plaintiff contends that. under the provisions of this statute, and the decisions of the courts construing the powers and authority of officers of national banking associations, the vice president and the cashier in the case at bar had no power to enter into a contract for the leasing of the premises in question, unless they had been authorized to do so by a vote of the directors of the bank. This may well be accepted as the general rule of law applicable in such cases, but there are exceptions to this rule.

In Spongberg v. First Nat. Bank of Montpelier, 18 Idaho, 524, 110 Pac. 716, the court in a very able and exhaustive opinion treats the question as follows:

"This rule, however, is not without a great many exceptions. For instance, the cashier or other officer of the bank may act without the scope of his authority and in a matter. to which he is not authorized, and yet the bank may subsequently act in such a manner with reference to the particular transaction or subject-matter as to amount to a ratification of the unauthorized action of the cashier or other officer. or it may take such affirmative action in accepting the benefits and fruits of the transaction as to preclude it from thereafter questioning or denying the authority of the officer to act for it. It may also remain silent and inactive at a time when good faith would have impelled it to have spoken up and disclaimed the unauthorized act of its officer. In these and many

other instances that might be mentioned, the unauthorized action of the cashier or other officer of the bank may become, in presumption and contemplation of law, the act of the bank itself." Citing Zane on Banks and Banking, par. 105; Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49.

Judgment for plaintiff was rendered canceling the lease, not for lack of authority in its execution, but for failure on the part of the lessee or his assigns to comply with the second clause of the letter of instructions. The trial court strictly construed this clause and held that, because the well had not been drilled within two and one-half miles of section 19 by Smith, the lessee, or by his assigns of the lease in controversy, the same should be canceled. What the plaintiff desired and required was a well within two and one-half miles of section 19. Plaintiff owned 160 acres of land in section 20; the lease executed to Smith covered 80 acres of this 160. If the well within two and one-half miles of section 19 was drilled, and proved to be a paying well, then the remaining 80 acres owned by plaintiff in section 20 would thereby be enhanced in value, and, as a result, plaintiff would secure all the advantages expected by this clause.

The evidence is that Smith owned a large number of leases in the vicinity of section 19, covering something like 1,800 acres, and assigned a number of these leases to the Star Oil Company, and, by so doing, induced the Star Oil Company to drill the well within two and one-half miles of section 19 and within the time specified. The transactions leading up to the execution of the lease were had between I. E. Cox, cashier of the plaintiff bank, and C. P. Smith, the lessee. The execution of the lease by Myers, vice president, and Smith was attested by I. E. Cox. Sometime after the well had been brought in, Smith, in company with a representative of one of the assignees, requested Mr. Cox to notify the Farmers State Bank of Cement, Oklahoma, to deliver the lease. This request was refused by Mr. Cox, who stated at the time that if this demand had been made at the expiration of the six months the lease would have been delivered, but he supposed that as it had not been called for at that time he had decided that the lessees did not want it. At that time it was stated to Mr. Cox that the terms of the lease had been complied with. This he did not deny, but refused to order the delivery of the lease and gave as a reason for his refusing that the well had not been drilled as contemplated by the parties.

We fail to see wherein there is any ambiguity in the letter of instructions, but conced-

ing that there is, what did the parties have in mind at the time the lease was executed? A paying well within two and one-half miles of section 19 would be worth as much to the plaintiff whether the same was drilled by the lessee Smith, his assignee, or by the Star Oil Company.

It is a well-settled principle of law that he who does a thing through another does it himself, and when Smith by assigning leases to the Star Oil Company induced the latter to drill what was known as the Kuntzmiller well, the second clause of the letter of instructions was fully complied with.

Section 946, Revised Laws 1910, provides that:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of the contracting, so far as the same is ascertainable and lawful."

Section 951, Id., reads as follows:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

We, therefore, conclude that the judgment of the trial court should be reversed.

The defendants contend in their brief that it will not be sufficient to protect their rights to merely reverse the cause and send it back for new trial. They claim that this court can by its judgment and its decree do final and complete justice between the parties; that this action was begun on January 17, 1918, and that there were more than three years of the term of the lease unexpired at said date, and that the litigation precipitated by the plaintiff bank has entirely destroyed, for the time being, the value of said lease, either as a salable commodity, or as the basis of the organization of development capital; and ask that, in the event the judgment of the trial court is reversed, and in order that complete justice be done, plaintiff be directed to execute a new lease with like terms and covenants as in the original contract, extending the lease for a term equivalent to the time occupied by this litigation; and, if this relief is not granted, then that a decree be entered, giving the defendants a reasonable time after this litigation is ended in which to explore and develop the premises under the terms and provisions of the lease.

On this question, counsel have failed to cite any authority, nor have we been able to find where this identical point has ever been passed upon by any of the courts. The lease, as we have seen, was executed on the

29th day of February, 1916, and was to remain in force for the term of five years from the date of its execution and as long thereafter as oil and gas, or either of them, should be produced from said land by the lessee. We decline to express any opinion as to whether or not there is any merit in this contention. We simply reverse the judgment of the trial court and remand the cause. If the defendants have any remaining rights, either equitable or legal in the premises, the same can be fully protected by proper proceedings in the court of original jurisdiction.

All the Justices concur.