ASHLAND TOWSON CORPORATION, Appellant, v. WEST SIDE SAVINGS BANK, Appellee.

No. 41793.

May 9, 1933.

Rehearing Denied September 21, 1933.

E. A. Lingenfelter, for appellant.

Parsons & Mills, for appellee.

Kintzinger, J.—Plaintiff is a Maryland corporation engaged in publishing a banker's manual, and in its petition claims $200 due upon an alleged $500 advertising contract, substantially as follows:

> "Bankers Manual
> "Ashland Towson Corporation, Publishers
> "An annual, $1.00, pocket directory of
> Banks of the United States.

"We offer to feature the undersigned's bank in an advertisement in this manual for five years, for Five Hundred ($500) Dollars, in five installments of $100 payable on delivery of one copy annually. The acceptor of this offer agrees that it is irrevocable, and the Notice at the bottom of this contract is a part of this offer.

> "Ashland Towson Corporation.

"The undersigned has read and accepts the above offer and authorizes the Ashland Towson Corporation to prepare and publish an announcement descriptive of the bank in future issues of their

> "Bankers Manual

| | |
|---|---|
| Our bank is known as | West Side State Savings Bank |
| Our main counting rooms are at | West Side, Iowa |
| Branch offices at | ............................ |
| We were established in the year | ............................ |
| Clearance House Number | 2045 |

| Capital | $50000.00 |
|---|---|
| Surplus | $-------------------- |
| Undivided Profits | $1500.00 |
| Deposits | $25000.00 |

Our officers are L. C. Thiedeman, Pres., J. W. Miller, Jr., Gustav Gradert, Vice Pres., Frank. Hoffmann, Cashier, Pearl Wickelsen, Teller.

We feature the following banking activities...........................................

We deal in the following securities.............................................................

We invite the following class of banking business  General Banking

We are depositories for the following funds.............................................

We solicit collections and commercial inquiries, requiring 25 cts. for presenting drafts, and 25 cts. for credit opinions.  .

Our banking correspond- ents are { First Natl. Chg. Stk. Yds. Natl. Chg. Live Stock Natl. Omaha. Merch. Natl. Cedar Rapids.

We are members of the following bank associations  Iowa Bankers Assn.

Herewith out last published statement issued on (date) from which you may select needed data.

City.  West Side, Iowa

Frank Hoffmann

Signature of Authorized executive.

Cashier.

Official Title.

Date  Sept. 13, 1929

"PUBLISHER's NOTICE.—The Manual is for advertising; Space is limited to half page, sold on a sliding scale of $200 for one year, $175 a year for two, $150 a year for three, $125 a year for four, or $100 a year for five years' continuous service.

" 'Our offer' is made on a five year basis, subject to adjustment to the foregoing rates for services rendered, should liquidation, breach of contract or developments justify cancellation.

"Ashland Towson Corporation."

The defendant is an Iowa corporation organized as a state and savings bank, at West Side, Iowa.  In division 3 of its answer the defendant denies that the signature is that of the defendant bank; and in division 4 it alleges that Frank Hoffmann, the cashier, who signed the contract, had no authority from the bank's board of di-

rectors to enter into it. The contract was sent to the defendant bank by mail and returned to plaintiff when signed. West Side, Iowa, is a small country village with a population of only 341 people. The bank's capital stock had been reduced from $50,000 to $25,000.

The bank's board of directors never authorized Frank Hoffmann, cashier, or any one else, to enter into the contract, and never knew of its existence until after this suit was commenced.

The evidence shows that all unusual matters of business coming up are taken before the bank's board of directors, and the cashier gets his authority from them. The cashier himself never read the closely written fine-print paragraph, which makes the instrument a contract, and says he thought he was signing a questionnaire about the bank and not a contract. Only his own and not the bank's name was signed thereto.

The only question in this case, therefore, is whether or not the bank is liable for the acts of its cashier in signing the alleged contract.

Divisions 3 and 4 of defendant's answer present two defenses: (1) That the contract did not contain the actual signature of the bank and was signed only as "Frank Hoffmann, Cashier". (2) That, if he did sign the instrument for the bank as claimed, he had no authority to do so from the bank, or its board of directors, and that has act was ultra vires, and not binding on the bank.

It may be that, under former rulings of this court, such a contract could be reformed or remade in a court of equity, but not in a court of law; and that parol evidence would not be admissible in a law action to vary the contract; and it might be binding only upon the party who signed it. Mathews & Co. v. Dubuque Mattress Co. and John Kapp, 87 Iowa 246, 54 N. W. 225, 19 L. R. A. 676, and cases therein cited.

The only consideration given the first question by the lower court was to say:

"The said signature of Frank Hoffmann and his official title is not in terms the signature of the defendant bank. To hold same to be the signature of the defendant bank and hold said instrument binding on the defendant bank would probably be deducible from the bank data or information preceding the signature of said Frank Hoffmann. Consequently there is a grave question as to whether the signature to the alleged contract is the signature of the defendant bank and that said instrument is binding on the defendant bank."

The lower court gave no further consideration to this question, but proceeded to consider the case upon the question of the cashier's authority to bind the bank thereby.

The question for consideration is whether or not "Frank Hoffmann, cashier," had any authority to enter into an alleged agreement to bind his bank on an advertising contract running for a period of five years at an expense of $500.

This involves the question of what expenses can be incurred by the cashier of the defendant bank without authority from the board of directors. Under the laws of this state, "the business * * * of such banks shall be managed by a board of directors of not less than five, all of whom shall be shareholders," etc. Code, section 9163.

This statute contemplates that the business of bank shall be conducted by its board of directors. The evidence shows that all unusual matters were always taken up by the directors. It is conceded that the ordinary present current expenses of a bank may be incurred by the cashier. The law is well settled that a cashier has authority to conduct the ordinary affairs of the bank, and such matters as are conducted by him under a usage, custom, or practice of the bank, in the course of its business, and when authorized by the board. When so acting the bank is bound by their acts.

But when the cashier of a bank attempts to enter into contracts which are not in accordance with the ordinary usage, custom, and practice, and when he acts beyond the apparent scope of his authority, and when he is not authorized so to do by the board of directors, his acts will not bind the bank. 7 C. J. 526; Morse on Banks and Banking, section 169; Smith v. Lawson, 18 W. Va. 212, 41 Am. Rep. 688; Schneitman v. Noble, 75 Iowa 120, 39 N. W. 224, 9 Am. St. Rep. 467; Montgomery Bank & Trust Company v. Walker, 181 Ala. 368, 61 So. 951; U. S. v. City Bank of Columbus, 21 How. (62 U. S.) 356, 16 L. Ed. 130; Harrison County v. Bank, 127 Iowa 242, 103 N. W. 121; Bank of Commerce v. Hart, 37 Neb. 199, 55 N. W. 631, 632, 20 L. R. A. 780, 40 Am. St. Rep. 479; Spongberg v. First National Bank of Montpelier, 18 Idaho 524, 110 P. 716, Ann. Cas. 1912A, 95, 31 L. R. A. (N. S.) 736 and note; Winsor v. Lafayette County Bank, 18 Mo. App. 665; Asher v. Sutton, 31 Kan. 286, 1 P. 535; Dycus v. Traders Bank & Trust Company, 52 Tex. Civ. App. 175, 113 S. W. 329; Marshall v. Bank of Archie, 76 Mo. App. 92; Holt v. Bacon, 25 Miss. 567; Bankers Utilities Company v. Farm-

ers Bank of Union (Mo. App.) 258 S. W. 17; Pacific Bank v. Stone, 121 Cal. 202, 53 P. 634.

In 7 C. J. 526 it is said:

"Although every bank officer, including every director, is an agent, the acts of directors are regarded as corporate acts, while those of other officers are governed by the general rules of agency. They have authority to act in accordance with the general usage, practice, and course of their business, and when thus acting they bind their bank in favor of third persons who have no knowledge of any narrower limitation of their power. When they act beyond this sphere, they must ordinarily act by authority or resolution of the directors, or according to special usage or custom; and individuals who are doing business with them are bound to know at their peril to what extent unusual power has been confided to such officers or agents, and cannot hold the bank bound by unauthorized acts as to which the bank did nothing to hold out that the necessary authority existed."

"The cashier of a bank is its chief executive officer. Still he is but an agent of the bank and his acts are governed by the general rules applicable to agents, and if he exceeds his authority his acts will not bind the bank." 3 R. C. L. 344.

In Schneitman v. Noble, 75 Iowa 120, 39 N. W. 224, 225, 9 Am. St. Rep. 467, it is said:

"In the absence of a more general authority, the cashier would be restricted in his power to bind his principal to the doing of such acts as are usually performed by persons who occupy the position he held. In other words, in the absence of proof of special authority, Gundrum [cashier] must be held to have had power to bind his employer only by acts done in the usual and ordinary course of business. Appellant was a depositor, and the notes were turned over in payment of the deposit. We do not think that bank depositors are usually paid in that manner, and there is no showing that it was the ordinary method adopted by Danford." (Danford was the owner of the bank of which Gundrum was cashier.)

A bank is not bound by acts which are not within the apparent scope of the cashier's authority, and which are neither authorized nor ratified. 7 C. J. 551.

In the case of Bankers Utilities Co. v. Farmers Bank of Union (Mo. App.) 258 S. W. 17, 19, it was held that the cashier had no authority, as such, to enter into an advertising contract, binding the bank to purchase a large number of small advertising "pocket-banks" at an expense of $650, without action of the board of directors. In that case the court says:

"In the instant case the bank had never approved similar conduct of such cashier; it simply allowed the cashier to buy the necessary supplies to run the routine of the bank from day to day; it had never authorized him to engage in an expensive advertising scheme or profit-making sales of pocket banks or other devices or novelties. It is not shown that any such authority beyond the statutory functions of a cashier, had become sanctioned by custom. It is true, as already said, the cashier may employ the necessary means to accomplish the powers granted to him, but we do not think that this transaction may be considered as a necessary means to accomplish the cashier's granted powers."

In the case of United States v. City Bank of Columbus, 21 How. 356, 364, 16 L. Ed. 130, it was held that a letter written by the cashier of the bank stating that the bearer was authorized to contract on behalf of the bank, for the transfer of funds for the government, does not come within his duties or authority, as cashier, and does not bind the bank. In that case the court said:

"The court defines the cashier of the bank to be an executive officer, by whom its debts are received and paid, and its securities taken and transferred, and that his acts, to be binding upon a bank, must be done within the ordinary course of his duties. His ordinary duties are to keep all the funds of the bank, its notes, bills, and other choses in action, to be used from time to time for the ordinary and extraordinary exigencies of the bank. He usually receives directly, or through the subordinate officers of the bank, all moneys and notes of the bank, delivers up all discounted notes and other securities when they have been paid, draws checks to withdraw the funds of the bank where they have been deposited, and, as the executive officer of the bank, transacts most of its business. The term 'ordinary business', with direct reference to the duties of cashiers of banks, occurs frequently in English cases, and in the reports of the decisions of our state courts, and in no one of them has it been judicially allowed to comprehend a contract made by a cashier,

without an express delegation of power from a board of directors to do so, which involves the payment of money, unless it be such as has been loaned in the usual and customary way. Nor has it ever been decided that a cashier could purchase or sell the property, or create an agency of any kind for a bank which he had not been authorized to make by those to whom has been confided the power to manage its business, both ordinary and extraordinary. * * * The case before us is one in which a cashier acts alone, and in which he testifies that he did so without any consultation with the president or directors of the company, and of which they had no information from him of the transaction until after the failure of Miner to pay the money in New Orleans. * * * It cannot be pretended that the directors, as a whole, or any one of them, except Miner, consented to the cashier's designation of Miner for any such purpose as was concluded between them, to induce the Secretary to believe that Miner was the agent of the bank, either to buy stock of the United States or to enter into contracts for the transmission of money, free of charge, to those posts where the United States should designate it to be put."

Appellants cite a number of cases to bear out their contention that the acts of the cashier in signing the alleged contract were within the apparent scope of his authority. In some of these cases, however, it was shown that the acts of the cashier were clearly within the ordinary apparent scope of his duties, because they related to the obligation of the bank upon certain negotiable instruments; in others, that authority was granted by the board of directors; and, in still others, that the acts of the cashiers were sanctioned by a long-standing usage, practice, or custom of the bank.

There is nothing in the case at bar to show that such a contract had ever been entered into before between the bank and plaintiff, or any one else; no such custom or practice was shown. Under the law as announced in the cases hereinabove mentioned, the cashier had power to incur only the ordinary current expenses of the bank. It also appears from the evidence that all unusual matters were always taken up by the board of directors. It cannot be said that, because a cashier has authority to incur current ordinary present expenses, as for current light, heat, and present advertising, he also has authority to enter into an advertising contract involving an expense of $500 for a five-year period. The size of the bank, the size of the town, the capital stock of the bank, and the nature of its business,

and the Iowa statute, placing the management of its business in the board of directors, are all matters of consideration. The capital stock of the defendant bank was only $25,000; the bank was located in a country village of 341 people. In our opinion, such a contract under such circumstances would be an extraordinary contract calling for attention of the board. If the cashier of a bank, under such circumstances, without authority of the board, could enter into a contract for a five-year period, he could also enter into one for twenty years, which would be the life of an ordinary corporation. Such a contract would not be an ordinary contract within the duties of a cashier. It is our holding, therefore, that this contract was extraordinary, and, under the law and under the evidence, should have been submitted to the board of directors before it was entered into.

We believe the cashier was acting beyond the scope of his authority in entering into it. This may be a close case, but we believe the findings of the trial court in holding that the cashier exceeded his authority is correct; and the contract is not binding on the defendant bank.—The judgment is therefore affirmed.

KINDIG, C. J., and ANDERSON, STEVENS, and ALBERT, JJ., concur.